STEPHEN MANN, by his guardian JOSEPH DUNCAN, v. SAMUEL BETTERLY.

[IN CHANCERY.]

Mere inadequacy of consideration furnishes no sufficient ground for the interference of a court of equity to set aside a deed, or contract; but inadequacy of consideration, united with such a degree of weakness and imbecility of intellect, as would justify the inference, that such weakness had been taken advantage of, will afford sufficient ground for such interference.

To a bill, which alleges, that a release of a bond, conditioned for the support of the orator, was obtained by the defendant for a grossly inadequate consideration, an answer, denying the inadequacy, and setting forth the previous arrangement of the parties, which led to the execution of the bond, the maintenance of the orator from that time to the time of cancelling the bond, and the amount paid for the release, was held responsive.

And it was held, in such case, that, in considering the question of the sufficiency of the consideration for the surrender of the bond, it was proper to take into

Mann *v.* Betterly.

account the amount of property conveyed by the orator to the defendant, on *occasion* of the *execution* of the bond, and the amount of expenditures by the defendant in the support of the orator.

That the intellectual capacity of one of the parties to a contract is below that of the average of mankind does not alone furnish sufficient ground for setting aside the contract.

APPEAL from the court of chancery. It was alleged in the bill, that the orator, Stephen Mann, on the second day of February, 1841, conveyed to the defendant certain real and personal estate, and received from him a bond, in the penal sum of four hundred dollars, conditioned for the support of the orator during his life; that the orator resided with the defendant, and was supported by him, until March 25, 1845, when the defendant induced him to surrender and discharge the bond upon receiving from the defendant two notes, for twenty five dollars each, payable in produce; that the consideration for this surrender was grossly inadequate; that the orator was naturally of weak mind and had become imbecile through age; and that the defendant procured the surrender of the bond by taking advantage of the orator's incapacity and weakness of intellect and of the influence which he had acquired over him by reason of his long residence in the defendant's family. And the orator prayed, that the discharge upon the bond might be decreed to be cancelled, upon his surrendering to the defendant the two notes executed by him, (which he offered to do,) and the bond be re-delivered to the orator, to remain in full force, according to its terms, and for general relief.

The defendant answered, denying that there was any inadequacy in the consideration for the surrender of the bond, or that he procured the surrender by fraud, or by the exercise of any undue influence, or that the defendant was incapable of transacting his business; but he alleged, that on the occasion of the execution of the bond, and as the consideration therefor, he received from the orator real and personal estate of the value of $310,87, that he had paid for the orator, at his request, $60, that he had supported the orator four years and two months, at an expense of $1,50 per week, amounting to $324 for the whole time, and that at the earnest request of the orator, without solicitation upon his part, he received the dis-

charge of the bond and executed his two notes, for $25 each, as alleged in the bill.

The answer was traversed, and testimony was taken upon each side, the substance of which is sufficiently stated in the opinion of the court.

The court of chancery dismissed the bill; from which decree the orator appealed.

*C. J. Walker,* for orator, cited *Jackson* v. *King,* 4 Cow. 207; 1 Story's Eq. 239, §§ 234–7; *Hall, Ex'r,* v. *Perkins,* 3 Wend. 626; *Conant, Adm'r,* v. *Jackson et al.,* 16 Vt. 350; *Malin* v. *Malin,* 1 Wend. 659; *Earl of Chesterfield* v. *Jansen,* 2 Ves. 155; 1 Atk. 352; *Taylor et al.* v. *Obee,* 3 Price 83; *Clarkson* v. *Hansway,* 2 P. Wms. 203; *Osmond* v. *Fitzroy,* 3 Ib. 129; *Porthington* v. *Alexander,* 2 Vern. 189; *Holden* v. *Crawford,* 1 Aik. 390.

*W. C. Bradley* and *A. Keyes,* for defendant, cited 1 Fonbl. Eq. B. 1, ch. 2; *Montague's Case,* 3 Chanc. Cas. 107; 1 Story's Eq. 238, 241; *Osmond* v. *Fitzroy,* 3 P. Wms. 129; *Willis* v. *Jarnegan,* 2 Atk. 251; *Farnam* v. *Brooks,* 9 Pick. 212; *Conant, Adm'r* v. *Jackson et al.* 16 Vt. 335.

The opinion of the court was delivered by

KELLOGG, J. The orator insists, that the consideration for the surrender and discharge of the bond, executed by the defendant for the support and maintenance of the orator, was grossly inadequate, and that the orator was of weak understanding, and that therefore the court should infer, that the discharge was obtained by fraud, circumvention, or undue influence.

It is a well settled principle, that mere inadequacy of consideration furnishes no sufficient ground for the interference of a court of equity, to set aside a deed, or contract; but it is equally well settled, that inadequacy of consideration, coupled with such a degree of weakness and imbecility of intellect, as would justify the interference, that such weakness had been taken advantage of, would afford sufficient ground for such interference. Indeed, the doctrine is laid down in the books, as generally true, " that the acts and contracts of persons, who are of weak understanding, and who are

Mann v. Betterly.

thereby liable to imposition, will be held void in courts of equity, if the nature of the act, or contract, justify the conclusion, that the party has not exercised a deliberate judgment, but that he has been imposed upon, circumvented, or overcome, by cunning, or artifice, or undue influence."

That the orator, at the time of his contract with the defendant for the surrender of the bond, was of weak understanding and capacity for the transaction of business, that in point of intellect he was not upon an equality with mankind in general, is apparent from the testimony in the case; yet it by no means follows, that he was incompetent to contract. This imbecility of understanding, however, when accompanied with gross inequality in the contract, may be sufficient to justify the inference of fraud and imposition.

It becomes important, then, to inquire, whether, in the case at bar, there was a gross inadequacy of consideration. The defendant, in his answer, denies the inadequacy, and asserts, that he paid a full and adequate consideration for the discharge of the bond. If we are to regard the notes, executed by the defendant, at the time of the surrender and discharge of the bond, as the only consideration, which entered into the view of the parties,—if we are to consider that transaction alone, as a distinct act, entirely independent of and unconnected with the arrangement, upon which the bond was executed, we should have no difficulty in pronouncing the consideration *grossly inadequate*. But we do not think the case is so to be regarded. The orator in his bill alleges, that the consideration was grossly inadequate. This the defendant, in his answer, denies; and he sets forth the previous arrangement, which led to the execution of the bond, the maintenance of the orator from that time to the cancelling of the bond, and the execution of the two notes of $25 each, which the orator still holds. It has not been questioned in the argument, but what the answer, in this particular, is responsive to the bill; and we are inclined to think it is responsive, and consequently legitimate evidence in the case.

We are also of opinion, that, in considering the question of the sufficiency of the consideration for the surrender and discharge of the bond, it is proper to take into consideration the amount of property conveyed by the orator to the defendant, and the amount of expenditure by the defendant in the support of the orator. Testing

42

the transaction by this rule, we think it must be obvious, that there was no inadequacy of consideration for the discharge of the bond. And is not this an equitable view of the subject ? If the orator, by the first arrangement, had obtained an unconscionable bargain of the defendant, it by no means follows, that he might not, either in whole or in part, release him from the performance of the contract, provided he had a legal capacity so to do. Indeed, common honesty would require him so to act. For aught that appears, the orator might have insisted upon the defendant's performing the condition of his bond; but he was not bound to do so.

If, however, the orator, at the time of the discharge of the bond, by reason of his weakness and imbecility of intellect, was incapable of contracting understandingly, or if the discharge was induced by the fraud of the defendant, it cannot be allowed to avail him. But it was not even pretended by the counsel for the orator, that a case of fraud was made out against the defendant, unless it was to be inferred from the assumed inadequacy of consideration ; which assumption, we have shown, is not well founded in fact. It is true, there is proof, that the defendant, just previous to the discharge of the bond, promised that he would not trade with the orator ; and however this promise may be regarded in a moral point of view, we apprehend it cannot impair, or in any manner affect, the legality of the contract subsequently entered into with the orator.

The remaining inquiry is, was the orator so devoid of understanding, or of so weakened an intellect, as to render him incompetent to contract ? The testimony of all the witnesses represents the orator to be of weak mind and capacity, and perhaps the balance of the testimony may be said to establish the fact, that his intellectual capacity was below that of the average of mankind ; yet we apprehend, that such a degree of incapacity does not alone furnish sufficient ground for setting aside his contracts. Such weakness of understanding, when connected with circumstances showing that the party had been overreached in the contract, or that it had been obtained by fraud, or imposition, or improper influence, would furnish abundant ground for annulling the contract. But we are unable to discover from the testimony, that the orator has been overreached in the contract, or that it was procured by the fraud, or imposition, or undue influence, of the defendant.

It has indeed been urged, that this supposed influence of the defendant over the orator may be inferred from the fact, that they resided together in the same house. But certainly there is no satisfactory evidence of the exercise of any influence by the defendant over the orator, nor do we find any thing in the case to raise a legal presumption of the existence of such an influence. It is also worthy of remark, that, while the orator is insisting upon the grossly inadequate consideration for the discharge of the bond, claiming that the surrender of it was equivalent to the surrender of some seven or eight hundred dollars, a recurrence to the bond shows the penal sum to be only $400, which was all the orator could have enforced against the defendant, provided the bond had not been discharged and the defendant had failed to support the orator, according to the condition of the bond. The discharge of the bond, then, at most, was only equivalent to the sum of $400.

The court are now called upon to set aside the contract, by which the bond was discharged by the mutual understanding of the parties, and, as we think, upon an adequate consideration; the effect of which would be to establish a contract, which, by the orator's own showing, was hard and oppressive to the defendant. We are not aware of any principle of equity, which would justify us in coming to such a result upon any evidence now before the court. We think the orator is not entitled to relief, that the decree of the court of chancery dismissing the orator's bill is correct, and the same is affirmed.