## PEELER v. LATHROP.

*(Circuit Court of Appeals, Fifth Circuit. December 7, 1891.)*

1. CIRCUIT COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.
The amount in dispute or the matter in controversy, which determines the jurisdiction of the circuit court in suits for the recovery of money only, is the amount demanded by plaintiff in good faith, and not the amount of recovery.

2. PRINCIPAL AND AGENT—RECOVERY OF MONEY COLLECTED—EVIDENCE.
In an action to recover rents alleged to have been collected by defendant as agent, testimony of plaintiff's solicitor that he fixed the amount of the claim by questioning the tenants who had paid the rents, where there is no showing to the contrary, is sufficient to show good faith.

3. SAME—LIABILITY OF AGENT FOR NEGLECT—ERROR NOT PREJUDICIAL.
In an action against an agent to recover for rents collected by him, and for damages for failure to collect rents, an allegation that defendant has "neglected said business, and hence has failed to collect rents that with diligence he might have collected," is insufficient, and demurrable; but, where such charge is disregarded on the trial, the overruling of a demurrer thereto is not prejudicial.

4. TRUSTS—AGREEMENT TO CONVEY PROPERTY PURCHASED ON FORECLOSURE.
B., a member of a firm, transferred to P., a creditor thereof, as collateral security for payment of the debt, two acceptances, secured by a deed of trust, on agreement by P. that on foreclosure of the trust-deed, if P. should purchase the property, he would, on payment of his debt, reconvey the same to B. *Held,* that the transaction constituted a trust in favor of B. for the two acceptances, which extended to the property in case of its purchase by P. on foreclosure.

5. EQUITY—ACCOUNTING—REQUISITES OF BILL.
A bill in equity for an accounting of rents collected by defendant as agent for plaintiff, and to avoid a settlement with defendant for misrepresentations made by him, cannot be sustained alone on the ground that defendant, when making the settlement, falsely represented that he had not collected any rents from certain property. It must appear that all the rents collected were more than sufficient to offset defendant's just claims against plaintiff.

6. SAME—WEIGHT OF EVIDENCE.
To a bill in equity to avoid a settlement for rents collected by defendant as agent, on the ground of false representations by defendant that he had not collected any rents from certain property, defendant answered under oath, as required by the bill, denying fully and specifically any false representations. *Held,* that such answer was not overcome by the testimony of plaintiff's solicitor, corroborated only by a letter by him sent to defendant, which defendant did not answer, it apparently requiring no answer.

Appeal from the Circuit Court of the United States for the Western Division of the Southern District of Mississippi.

Bill in equity by Fannie E. B. Lathrop against Richard Peeler for an accounting of rents collected by defendant, and to set aside a settlement between the parties for false representations of defendant. On the death of defendant the suit was revived in the name of Clementine G. Peeler as administratrix. Decree for plaintiff. Defendant appeals. Reversed.

### STATEMENT OF CASE.

On December 31, 1889, appellee filed in the circuit court the following bill:

"Mrs. Fannie E. B. Lathrop, a citizen of the state of Louisiana, residing in New Orleans, exhibits this, her bill of complaint, against Richmond Peeler, a citizen of the state of Mississippi, residing in the western division aforesaid. Complainant shows that on the 25th day of February, 1888, and for many years prior thereto, the said Peeler was a mortgagee in possession of complainant's two tracts of land in Warren county, Miss., known as the

' Upper ' and ' Lower Butler Places on Old River,' which are particularly described in Exhibit A hereto, to which reference is hereby made for a more particular description thereof; holding the same under an agreement that the rents of said land should be credited on the debt and on the taxes on the lands, which he, said Peeler, was to pay. That on that day they had a settlement of said matters, and said Peeler represented that the rents of the Lower place, which he had actually received, net, after payment of all the taxes on the lands, which he said he had paid, amounted to about enough to pay said debt, and that he had not received any rents from the Upper place at all. Relying on the truth of said representations, complainant accepted a deed from said Peeler for said lands, a copy whereof is herewith filed as Exhibit A, and prayed to be taken as part hereof, and gave him a receipt in full. Now complainant shows that said Peeler had, in fact, as he then well knew, and as she has since discovered, collected rents from said Upper place to a large amount, —the exact amount, however, she is unable to state,— and that he had negligently suffered large portions of said land, to-wit, lots 7 and 8, sec. 8, and lots 3 and 4, sec. 15, all in towhship 17, range 3 east, in Warren county, Miss., to be sold for the very taxes he had undertaken and was in duty bound to pay, and which he claimed he had paid; so that complainant has lost such portions entirely, and is damaged to the full extent of their value, for which he should compensate her. Complainant states that said Peeler was a trustee in the matter, intrusted with the lands for the purpose aforesaid, and bound to exercise the utmost diligence and good faith; that he was a man of good reputation, and she had no reason to suspect any misrepresentation, bad faith, or deception; that she did not live in this community, and knew nothing about the facts. Complainant further showed that said Peeler had neglected said business, and hence had not collected as much rent as said lands were reasonably worth, or as they, by the exercise of even ordinary diligence, would really have brought, although he charged for his pretended attention to the business. That, if he had attended to it, he would have realized a very large sum of money in excess of his debt years before the date of said settlement, and she claims that he should be held accountable for the rents so lost by his fault. Complainant is informed and believes that there is due her from said defendant forty-nine hundred dollars, for which she asks a decree. The premises considered, complainant prays that said Richmond Peeler may be required to answer this bill on oath, and to answer showing the amount of his debt, with interest; the amount of taxes paid by him, and when, and on which parcels; the amount of rents actually collected by him from both places, and what rents he failed to collect as aforesaid; that an account be stated of such matters and of the value of the lands which by his failure to pay the taxes thereon has been lost to complainant; and that he may be decreed to pay the balance of the rents over and above his debt and interest and taxes, and also the amount of damages she has sustained by the loss of said land as aforesaid. Or, if mistaken in the relief prayed for, complainant prays for such other further or general relief as may be equitable in the premises."

No further proceeding seems to have been had in the case until July following, when an agreement of counsel was filed to the effect that filing an answer should not prejudice defendant's right to file a demurrer and have judgment thereon; and at the same time the death of defendant was suggested, and an order of revivor was entered against Mrs. Clementine G. Peeler as administratrix. On January 3, 1891, the defendant filed a sworn answer, in substance as follows:

She admits on the 25th day of February, 1888, the said Richmond Peeler was in possession of the lands mentioned in said bill; but re-

spondent denies that the said R. Peeler was in possession of said lands as mortgagee, and denies that they were the lands of said complainant; but, as she is informed and believes and states the fact to be, that some time in 1867 or thereabout one B. J. Butler, who was the father of complainant, as a member of the firm of Butler, Terry & Co., doing business in the city of New Orleans as cotton factors, became indebted to the said Peeler, for proceeds of cotton consigned to him, in a large sum, to-wit, $3,260, which, becoming bankrupt, he was unable to pay. That on the 21st of April, 1866, one E. S. Butler executed a deed of trust conveying said lands to trustees, to secure to B. J. Butler four bills of exchange for $1,000 each, accepted by Butler, Ferrell & Co. That for the non-payment of said bills said deed of trust was, on the 14th day of January, 1871, foreclosed, and at the sale thereof the said Peeler became· the purchaser for the sum of $1,800. That before said sale, to-wit, on the 19th day of February, 1870, said B. J. Butler assigned two of said bills of exchange to the said Peeler, and agreed in writing that they should have priority over the other two as collateral for the payment of said debt; and it was also then agreed on the part of said Peeler as follows:

"And I agree that I will, whenever the said account and interest shall be fully paid to me, transfer and assign said two bills of exchange and deed of trust to said Baxter J. Butler, or to whom he may direct; or, if said land mentioned in said deed of trust shall be sold and bought by me, or in my name, that I will, upon payment of said account and interest, convey the same to the said Baxter J. Butler, or to whomever he may direct."

—That, after the said lands were bought by the said Peeler as aforesaid, the said Peeler, on the 22d of September, 1873, made an agreement with C. W. Butler, wife of B. J. Butler, wherein he promised to carry out the agreement made before then with B. J. Butler; and, upon the payment of said debt, to convey the lands to C. W. Butler, or to whom she might direct. It was further agreed that the said Peeler should be repaid any taxes he might pay, and any rents received by him should be credited upon said debt.

Respondent avers that said agreements were the only agreements in writing made by the said Peeler in reference to said lands; that at the time they were made neither the said B. J. Butler nor C. W. Butler were the owners of said lands, or of the equity of redemption therein. Respondent admits that on the 25th day of February, 1888, the said Peeler had a settlement and accounting with the complainant as stated in her bill, who then claimed a right to a conveyance of the lands; that he then conveyed the same to her, and she gave him thereupon a receipt and acquittance in full discharge of all demands against him; but respondent denies that said Peeler then made any false statements whatever as to the rents, or any other matters in reference to said business. Respondent denies that complainant was at the time of said settlement the owner of said land, and avers that said conveyance to her was without any consideration, and is void. But, further answering in reference to said settlement, this respondent denies, as hereinbefore stated, that any

false representation was made by said Peeler to said complainant; and, on the other hand, avers that at said settlement the said Peeler informed complainant of the fact that nearly or quite all of his accounts had been destroyed by fire,—once in 1886, and once a few years before then. That from his recollection of the average amounts of rents collected and taxes and improvements paid, and the amounts paid to Mrs. C. W. Butler, he was unwilling to claim that a balance was still due him. That the settlement was avowedly made upon his statements, based upon his memory, and thereupon he executed to the said complainant a deed to said land, and in consideration of such settlement and acquittance received from her, in writing, a full discharge of all liability in the premises.

Respondent denies that the said Peeler received in his life-time, and while in possession of said lands, an amount for rent of the same, which, after deducting therefrom taxes and other lawful charges, exceeded the said debt and interest due him. Respondent says that she is unable to make a statement of what rents were received, because some time in 18—, and again in 18—, nearly all the books and accounts of the said Peeler were destroyed by fire. She states, however, that on the 1st of January, 1876, a statement was made by which it appears for the years 1871 and 1872 he received for rent $1,400, and for the years 1873 and 1874 he received $510, and paid out for taxes, etc., some $500, leaving a balance then due him in the sum of $2,751.72; that he expended at different times since said settlement large sums of money in making necessary repairs, and in building fences, which in one year amounted to some $600, being the cost of putting a wire fence around said place; that the maintenance of a fence was costly, owing to the said overflows washing the same away. For the reason that all of said accounts were burned, respondent is unable to state definitely the exact amount of said repairs. She avers, however, that the said complainant, and, after the death of her father, her mother, was constantly advised of the extent of the income from said place. That in 1888 the said Peeler, not having his accounts, they having been burned, came to a settlement as aforesaid, based upon his recollection that in point of fact said place had not averaged, after paying all necessary expenses, annually, a net income exceeding $225 or $250. That for four or five years before the death of the said Mrs. C. W. Butler, the mother of complainant, and after the death of B. J. Butler, the said Mrs. Butler was without means and dependent, and during said years, at her request, a large portion of the rents were paid to her by the said Peeler, and was permitted by the said Peeler to receive and collect said rents. The amount so collected, for the reasons above stated, respondent cannot definitely state, but believes and avers said sum was perhaps as much as $1,000. That during several years little or no rent was collected, in consequence of overflow,—said lands being low, or subject, more or less, to inundation nearly every year; and, if an accurate account could be stated, a balance would be found still due upon said debt. Nevertheless he consented to the settlement as aforesaid, and in consideration therefor, as before stated, con-

veyed said lands to said complainant. And afterwards, to-wit, on the 3d day of January, 1891, the defendant filed her demurrer to complainant's bill herein, as follows:

"The said defendant, not confessing any of the matters in said bill contained to be true in the manner and form as therein set forth, demurs thereto, and for cause of demurrer says that said bill does not show that the amount or value of the property in controversy is within the jurisdiction of this court. (2) And as to so much of said bill as seeks to charge the estate of the intestate for value of rents lost through the failure and negligence on the part of Richmond Peeler in his life-time to collect the same, she demurs thereto, and for cause of demurrer says that the allegations of said bill in that regard are insufficient, and do not constitute any liability upon said estate, and are vague, indefinite, and uncertain. (3) And to so much of said bill as seeks to charge a liability for the value of certain lands alleged to be lost by reason of the non-payment of the taxes thereon, she also demurs thereto, because: *First*, said lands are not described; and, *second*, because such failure to pay said taxes does not raise any liability beyond the amount of the taxes, and the acquisition of any tax-title to the same by any stranger is too remote and consequential; *third*, because in this regard said bill is indefinite in not stating how said lands were lost. And to so much of said bill as seeks to charge for rent collected on the Upper Butler place, because said bill in that regard does not show complainant entitled upon the statute to any relief in relation thereto. Wherefore defendant prays judgment whether she should make further answer."

On July 6, 1891, the complainant dismissed her bill, "in so far as it claimed damages of defendant by reason of the said Richmond Peeler having permitted certain lands mentioned in the bill to be sold for taxes;" and on the 16th day of July, 1891, the defendant filed a motion to dismiss complainant's bill, because it appears that the matter in dispute is less than $2,000, and this court is therefore without jurisdiction; and on the same day the cause, by agreement, was submitted for final hearing upon the pleadings, motion to dismiss for want of jurisdiction, and upon the depositions of certain witnesses. It was further agreed that B. J. Butler died in 1872, leaving surviving him C. W. Butler, his wife, and one daughter, the complainant.

The testimony was to the effect that Peeler collected rents from the Upper Butler place, prior to the settlement in 1888, to the amount of $1,200; and, in addition, Mr. Marshall, a member of the bar, who represented complainant in the settlement, and who filed complainant's bill in this case, testified as follows:

"Mrs. Lathrop demanded a settlement of accounts, claiming that there was a considerable amount due her from the Lower place. She claimed that she had the right to charge him with reasonable rents. He refused to settle on those terms, but was willing to settle for what he actually received; but when he came to state that, he said that these papers had been burned in the loss of some house, I do not remember what, and that he was not able to furnish any itemized account at all, but that he knew that the rents that had been received would be about equal to paying the debt. Mrs. Lathrop wanted him to account for the rents of the Upper place, asking him, as she did not live here, what was its condition, and what rents he had received from it. Mr. Peeler assured her that the Upper place was originally wild, or in the woods, which we knew to be true, and that he had never received any

rents from it at all; that the negroes whom he had up there were on clearing lands,—that is, clearing the land on leases for a number of years, the improvement to be in lieu of rent. I had every confidence in Mr. Peeler. I thought that, except on this question as to what rents he was chargeable for, it was open to discussion. He had acted straightforwardly about the whole thing, and I assured Mrs. Lathrop that his word was worthy of credit; and, on the distinct understanding that he had received no rents from the Upper place at all, she settled with him. To the best of my recollection she gave him her receipt in full. * * * *Question.* I understand you to say that when the settlement was made and the deed executed by Mr. Peeler to Mrs. Lathrop it was upon his distinct representation that he had received no rents from the Upper place? *Answer.* Yes, sir; that is so. You see, I stated it to him in my letter, and he never denied it to me. *Q.* Do you know of any other fact of interest to either of the parties to this litigation, or material to the issues involved? If so, please state them. *A.* Yes, sir. After the discovery that there had been rents payable from the Upper place, I got all the tenants from that place, and some who had been tenants in previous years, down here, and questioned them as to the amount of rents that they collected; and the amount of rent as they represented it to be, collected by Richmond Peeler from the Upper place, amounted to over $3,000,—I don't remember the exact amount,—and that was the reason I sued in the federal court."

The circuit court found in favor of complainant in the sum of $900, and the defendant took an appeal to this court, assigning as errors:

"(1) That said United States court for the southern district of Mississippi, western division, erred in overruling the demurrer of the defendant to complainant's bill. (2) That said court erred in denying the motion of the defendant to dismiss said cause for the want of jurisdiction, the amount in controversy being less than two thousand dollars. (3) Said court erred in rendering a decree against said defendant for the sum of nine hundred dollars, because the testimony failed to establish a state of facts by reason of which there was any legal or equitable liability to, or on the part of defendant to plaintiff, and because, if any liability ever existed, it was barred. Wherefore the said C. G. Peeler, administratrix as aforesaid, prays that said decree of said circuit court be reversed, and the bill of complaint herein be dismissed."

And the record shows the following agreement of counsel, to-wit:

"It is agreed that the decree in the above case shall be held and deemed to overrule defendant's demurrer."

*L. W. Magruder,* for appellant.

*R. V. Booth,* for appellee.

Before PARDEE, Circuit Judge, and LOCKE and BRUCE, District Judges.

PARDEE, J. Complainant in the circuit court asked for a decree in her favor for the sum of $4,900 on three accounts: (1) For rents collected in excess of the debts and demands due Richmond Peeler; (2) for the rents Peeler failed to collect through negligence; and (3) for the value of certain lands sold for taxes. Her bill did not allege how much was due or claimed to be due on each account. When she dismissed her bill "in so far as it claimed damages by reason of the said Richmond Peeler having permitted certain lands mentioned in the bill to be

sold for taxes," there was left a bill claiming a decree for $4,900 on account of rents collected and uncollected.

Counsel for appellant claims in his brief that the demand for the failure to collect rents was abandoned, but we find nothing in the record to show this, except that such demand does not appear to be supported by any testimony, and is not referred to by the circuit court in deciding the case.

The motion to dismiss for want of jurisdiction, made in the circuit court, was based on the ground that, after the dismissal of the bill in so far as it claimed damages for lands sold for taxes, "it appears that the matter in dispute is less than $2,000." It certainly did not appear from the bill or any other pleading filed by complainant that the amount claimed was less than $2,000. The only way it could have appeared, if at all, was in the testimony. That undoubtedly showed that the complainant had only been able to prove up about $1,200. This appears by a stipulation found in the record in reference to omitting the testimony of certain witnesses from the transcript. Whether the testimony omitted from the record tended to prove more, we are not informed. It is not, however, the amount a plaintiff is able to prove he is entitled to that determines the amount in dispute for the purpose of jurisdiction, for otherwise the failure of a plaintiff to recover would oust the court of jurisdiction. The amount in dispute, or matter in controversy, which determines the jurisdiction of the circuit court in suits for the recovery of money only, is the amount demanded by the plaintiff in good faith. See *Hilton* v. *Dickinson*, 108 U. S. 165, 2 Sup. Ct. Rep. 424; *Barry* v. *Edmunds*, 116 U. S. 550–561, 6 Sup. Ct. Rep. 501. In determining in this case whether the complainant was claiming in good faith an amount exceeding the sum of $2,000, exclusive of interest and costs, the evidence of the solicitor who drafted and filed the bill is of very great weight. He testifies as follows:

"After the discovery that there had been rents payable from the Upper place, I got all the tenants from that place, and some who had been tenants in previous years, down here, and questioned them as to the amount of rents that they collected; and the amount of rent as they represented it to be, collected by Richmond Peeler from the Upper place, amounted to over $3,000,— I don't remember the exact amount,—and that was the reason I sued in the federal court."

—And the record shows nothing to the contrary.

Appellant also complains that the demurrer interposed to the bill in the court below was overruled. It does not appear that any action was had in the circuit court on the said demurrer. It was neither set down for argument nor confessed, and the court disregarded it in passing on the merits of the case. A stipulation in the record, made without date or filing, but apparently after appeal taken, is to the effect that it is agreed that the decree shall be held and deemed to overrule the defendant's demurrer. The demurrer was filed with or after the answer, and was a special one, and went to portions only of the bill, except on the ground that the bill did not show a controversy in amount within the

jurisdiction of the court; but a short consideration may be necessary. The objection to the jurisdiction was not well taken, as we have hereinbefore shown. The bill was subsequently dismissed in so far as it claimed damages for lands sold for taxes, so that the third ground of demurrer need not be considered.

There remains the second ground, charging that the allegations of the bill in regard to the demand for rents lost through the failure and negligence of Peeler in his life-time to collect, are insufficient, vague, indefinite, and uncertain. This ground of demurrer should have been sustained. The bill merely states in this regard " that said Peeler had neglected said business, and hence had failed to collent rents that, with diligence, he might have collected." and was clearly insufficient as the basis of a liability. As, however, no testimony appears to have been taken on account of failure to collect rents, and as such charge was totally disregarded in the court below by the judge deciding the case, it does not appear that the demurrer need cut much figure in the consideration of the appeal in this court.

This brings us to the main complaint of appellant, substantially that on the bill, answer, and proof as made in the circuit court the appellee is not entitled to a decree for any sum whatever, appellant contending that under the agreements made by Peeler no trust relation was created, so far as the lands and the rents thereof were concerned, and that the agreement with Mrs. Butler to credit rents in the contract of 1873 was without consideration, and that claims for rent under it are barred by the statute of limitations. The view we take of the case is this: The original transactions between B. J. Butler and Peeler created a trust in favor of Butler for the two acceptances transferred by Butler to Peeler as collateral security for the payment of Butler, Terry & Co.'s debt to Peeler, and by the express terms of the documents in writing passed between the parties the trust extended to and covered the mortgaged real estate when the mortgage securing the acceptances was foreclosed by Peeler, and he bought in the mortgaged property. From the date of purchase under the foreclosure the lands bought by Peeler thereunder took the place of the acceptances, and Peeler's title thereto was that of trustee for the security of his debt against Butler, Terry & Co. He fully acknowledged the trust in the agreement entered into in 1873 with Mrs. Butler, and again when he made the settlement in 1888 with the complainant. In the agreement of 1873 his rights as trustee were more clearly defined, and his liabilities enlarged, than in the original agreement. The settlement made in 1888 seems to have been on the basis of the agreement of 1873, and the settlement was to the effect that the rents Peeler had received were sufficient to extinguish the debt due him by Butler, Terry & Co., as well as the taxes paid by him, and his outlays, charges, and expenses, including compensation. No account was stated, nor vouchers exhibited; in fact, no account could have been stated, as Peeler's papers and accounts had been destroyed by fire. The case shows that Peeler represented that he had received rent about equal to paying the debt, and

then offered to and did convey the lands in question to the complainant, who accepted the same, giving full acquittance.

Under the pleadings and proof there are two serious difficulties in the way of a recovery by the appellee: (1) Although a full account of the trust is prayed for in the bill, on the theory that the settlement of 1888 should be avoided on account of Peeler's misrepresentations in making the said settlement, yet no account has been taken, or sufficient proof offered, to show that on a full account Peeler's estate would be indebted in any sum. The case, in this respect, at best, for appellee, only shows that Peeler said that he had not collected any rents at all from the Upper place, when in truth and in fact he had collected about $1,200. It seems clear that appellee cannot recover solely on the ground that Peeler made false representations which appellee believed, and that he collected rents from the Upper place. Unless Peeler collected rents from all the lands, sufficient to more than pay the Butler, Terry & Co. debt, with interest, costs, outlays, and charges, appellee cannot recover. (2) The proof as to false representations by Peeler is not sufficient to overthrow the settlement of 1888. The bill alleged the false representation in terms, and called on the defendant to answer under oath. The defendant answered on oath; denying fully and specifically that Peeler made the representations alleged in the bill to be false and untrue. The appellee's proof on the point consists of the testimony of only one witness,—that of her attorney and solicitor, Mr. Marshall; and there are no corroborating circumstances shown sufficient to defeat the sworn answer. The only corroboration claimed is that Marshall also testified that he sent Peeler a letter, in which he said that Peeler had represented in the settlement that he had received no rents from the Upper place, and Peeler had not answered the letter. We notice, however, that the letter of Marshall referred to was one in answer to a previous letter of Peeler in regard to seizing some cotton from the Upper place, and apparently required no answer. In our opinion, no presumption arises against Peeler from neglecting to answer. When the answer to a bill is required to be made, and is made, under oath, and is responsive to the allegations of the bill, such allegations must, to entitle complainant to relief, be sustained by the testimony of two witnesses, or of one witness corroborated by circumstances which are equivalent in weight to the testimony of another witness. See 2 Story, Eq. Jur. § 1528; *Vigel* v. *Hopp,* 104 U. S. 441; *Railroad Co.* v. *Dull,* 124 U. S. 175, 8 Sup. Ct. Rep. 433; *Development Co.* v. *Silva,* 125 U. S. 249, 8 Sup. Ct. Rep. 881; *Beals* v. *Railroad Co.,* 133 U. S. 295, 10 Sup. Ct. Rep. 314. Our judgment is that the complainant in the court below failed to establish a case for equitable relief, and that the decree in her favor was erroneous, and should be reversed; and that, on the case as made, the defendant should have had a decree dismissing the bill. The decree appealed from is therefore reversed, with costs, and the cause remanded, with instructions to dismiss the bill.