## SMITH v. SMITH.

<div style="float:right">

| 106 | 303 |
|---|---|
| s112 | 851 |
| 106 | 303 |
| 113 | 120 |
| 106 | 303 |
| 115 | 613 |

</div>

1. To justify the admission of secondary evidence as to the contents of a lost deed, it must be shown not only that such a deed once existed, but also that it was properly executed.
2. Under the evidence in the present case there were questions which should have been determined by a jury, and it was therefore error to direct a verdict.

Argued October 20, — Decided November 19, 1898.

Equitable petition. Before Judge Butt. Muscogee superior court. May term, 1898.

*Blandford & Grimes,* for plaintiffs in error.
*Brannon, Hatcher & Martin,* contra.

COBB, J. Sophronia Smith as the widow of William Smith applied to the ordinary for a year's support, which was set apart to her in a city lot described as lot No. 7 of a designated survey, "being the lot upon which William Smith died." No objection was filed by any one to the return of the appraisers, and it was recorded as required by law. After this, three other Smiths, alleging that they were the children and heirs at law of William Smith and were in possession of the lot, entered what purported to be an appeal to the superior court. Sophronia Smith then brought her petition, praying for the appointment of a receiver to take charge of the property, alleging that there was no administration on the estate of William

Smith and no necessity for any, and that upon his death the three other Smiths took possession of the property and refused to permit plaintiff to enter thereon; that they were insolvent, and that their only reason for entering an appeal from the judgment of the ordinary was to delay plaintiff in obtaining possession and enjoyment of her year's support. In their answer the defendants alleged that they were in possession under a title derived through a gift from their deceased father more than seven years before his death. A receiver was appointed to take charge of the property pending the litigation. To the order appointing the receiver the defendants excepted, and a decision was rendered by this court declaring that the trial judge did not abuse his discretion in appointing the receiver. *Smith* v. *Smith*, 96 *Ga.* 772. When the case came on for a final hearing, it appeared that the defendants had voluntarily dismissed their appeal from the judgment of the court of ordinary, and the plaintiff moved for a decree that the receiver turn over to her the house and lot and accrued rentals, less the costs of that proceeding, as her year's support under the judgment of the ordinary, and that the petition abate and be dismissed. The court granted the decree moved for. The defendants excepted and again brought the case to this court, and it was held that the decree rendered must be set aside. *Smith* v. *Smith*, 101 *Ga.* 296. Thereafter the case came on for a final hearing in the court below. The plaintiff introduced in evidence the petition to the ordinary for a year's support, and the order setting it apart to her in the lot designated in the return of the appraisers. Plaintiff testified that William Smith had resided on the lot in dispute for twenty years, and that none of the defendants except Antoinette Smith, an unmarried daughter, had lived on the place before his death. There was also evidence for plaintiff, showing that William Smith, for several years immediately preceding his death, had returned the property for taxation in his own name, and evidence tending to show that he had paid all taxes due on the same up to the time of his death. Joseph Moore, a witness for plaintiff, testified that he owned the south half of the lot named in the return of the appraisers, and that he had seen William Smith on two or three occasions

pay Mrs. Anna Maria Harris different sums of money for the place on which he died, but witness did not know whether it was Smith's money or that furnished by his children, and did not know whether Mrs. Harris had ever made a deed thereto either to Smith or his children; that the place on which Smith died is under one enclosure, and includes all of lot No. 6 of the survey above referred to, and the north half of. lot No. 7; that witness sold the north half of lot No. 7 to Nancy Smith, the first wife of William Smith and mother of defendants, and made her a deed to it; and that William Smith claimed the place on which he lived and died, up to the time of his death. The plaintiff disclaimed, in open court, any claim under the year's support set apart to her to the north half of lot No. 7, which was conveyed by Joseph Moore to Nancy Smith.

Squire Smith, one of the defendants, testified, that the place in dispute is all under one enclosure and includes lot No. 6 and the north half of lot No. 7; that lot No. 6 was bought by his father for the defendants at their instance; that their money paid for it and a deed was made to them. The deed was made by Mrs. Anna Maria Harris and her husband, Daniel Harris, and was witnessed by two or three witnesses. Witness did not remember their names, but thought one of them was named Chapman or Chapple, or some such name. He had seen the deed, which was in the possession of his father the last time he saw it, and is now lost; had tried to find the deed, and so had his father before he died. His sister, Antoinette Smith, lived on lot No. 6 ever since it was bought by defendants, and so did his father. The other children lived there also at various times. His father never claimed lot No. 6, and the defendants always paid the taxes. Witness could not read writing, but had heard the deed read over by others, and had kept the deed for some time. He had never lived on the place, but claimed an interest in it. Antoinette Smith, one of the defendants, testified that she had lived on the place where her father died, ever since it was bought by defendants, who furnished the money. Solomon Smith, another of the defendants, testified that the place on which his father died was under one enclosure and included the whole of lot No. 6 and

the north half of lot No. 7.   There were two houses on the
place, one being on lot No. 6 and the other on the north half
of lot No. 7.   His father died in the house on lot No. 6.   Wit-
ness had lived on the place ever since it was bought, except
when temporarily away at work.   Defendants were turned out
of both lot No. 6 and the north half of lot No. 7 by the sheriff,
under an order from the judge.   Defendants gave the money
to their father to buy lot No. 6 for them, which he did.   The
lot was bought from Mrs. Anna Maria Harris and her husband,
and they gave defendants' father a deed to the same.   Witness
had seen the deed many times.   It was kept in a drawer in
the house, and was witnessed by two or three persons, whose
names witness did not remember.   The deed was made to de-
fendants, and is lost.   Witness has read it several times, and
has tried to find it, but has not seen it since his father died.
J. B. Owens testified that he was a policeman of the City of
Columbus, and while inspecting the lot on which William
Smith died he asked Smith if he would sell the place, and
Smith replied that he could not, as it belonged to his children.
John Hargett testified that he tried to buy the place from Wil-
liam Smith, and that Smith told him that he could not sell it,
as it belonged to his children.   Lillie Dawson testified that
William Smith never claimed the place as his own, but said it
was his children's.

At the conclusion of the testimony the plaintiff made a mo-
tion to rule out the testimony of the defendants relating to any-
thing "about a deed from Anna Maria Harris and Daniel Har-
ris to the children of William Smith, deceased."   The court
sustained the motion and ruled out the testimony; and this is
one of the errors assigned.   The court then, upon motion of
plaintiff, directed the jury to find a verdict in favor of the plain-
tiff, and this ruling is also assigned as error.

1. We do not think there was any error in ruling out the
parol evidence offered to prove the contents of the deed claimed
to have been made by Mrs. Harris and her husband to defend-
ants.   In the case of *Calhoun* v. *Calhoun*, 81 *Ga.* 91, it was held
that, to justify the admission of secondary evidence as to the con-
tents of a lost deed, not only the previous existence of the deed

must be shown, but it must also be shown to have been properly executed; and Justice Simmons, in the opinion, uses this language: "We think the proper rule of law in regard to the admissibility of secondary evidence is, not only that the plaintiff must show the existence of the deed, but that he must show that it was properly executed. It is possible that the deed may have been written and signed by the grantor, and yet may never have been executed according to law." See also *Durham* v. *Holeman*, 30 *Ga.* 619; *Bigelow* v. *Young*, 30 *Ga.* 123; *White* v. *Clements*, 39 *Ga.* 232. Even if the evidence offered was sufficient to establish the fact that the alleged deed once existed, there was no evidence whatever going to show that it had been properly executed.

2. We think, however, that the court erred in directing a verdict. The evidence introduced was not of such a character as to require a finding either for one party or the other, but raised questions which should have been determined by a jury. If the evidence for the plaintiff was to be believed, William Smith had been in adverse possession for more than twenty years, and therefore the title acquired by the widow under the year's support set apart to her was superior to the claims of his children. If the testimony for the defendants was to be believed, William Smith had not been in adverse possession during the length of time claimed, but his possession was permissive only and recognized by him as such, there being testimony to the effect that on three separate occasions he publicly disclaimed title to the property and asserted that it belonged to his children who are the defendants in the case. The case must be tried again and a jury allowed to pass upon the issues made by the pleadings and evidence.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., absent.*