## WILCOX v. EL BANCO POPULAR DE ECONOMIAS Y PRESTAMOS DE SAN JUAN, P. R.

(Circuit Court of Appeals, First Circuit. December 3, 1918.)

No. 1311.

1. COURTS ⬦347—FEDERAL COURT—PLEADING—DISREGARDING TECHNICAL DEFECTS.

Under equity rule 19 (198 Fed. xxiii, 115 C. C. A. xxiii), requiring the court to disregard defects in the proceeding which do not affect the substantial rights of the parties, facts alleged in a cross-bill, although it does not meet the technical requirements of such a pleading, may be considered as a part of the answer.

2. MORTGAGES ⬦463—FORECLOSURE SUIT—DEFENSES—FRAUD.

Evidence *held* to substantiate allegations in the answer in a foreclosure suit that a stipulation in a deed by which defendant assumed and agreed to pay a mortgage on the property, not then of record, was inserted by fraud and without his knowledge.

3. MORTGAGES ⬦559(3)—LIABILITY FOR DEFICIENCY—ASSUMPTION OF MORTGAGE BY GRANTEE.

In a suit to foreclose a mortgage, and also to enforce the personal liability of a grantee of the property under a provision of the deed by which he assumed and agreed to pay the mortgage, the validity of the deed is a material issue.

4. ACKNOWLEDGMENT ⬦20(3)—INTERESTED PARTY AS NOTARY.

Under Notarial Act Porto Rico, § 20, providing that instruments containing any provision in favor of the notary executing the same, or witnessed by his relatives, clerks, or employés shall be void, a deed to mortgaged property in which the grantee assumed and agreed to pay the mortgage, acknowledged before a notary who was president and a substantial stockholder of the bank owning the mortgage, and witnessed by his employés, is void.

5. EQUITY ⬦339—PLEADINGS AS EVIDENCE—SWORN ANSWER.

It is a general rule in chancery that, when an answer is under oath, such parts of it as are responsive to the bill are evidence equal to the testimony of one credible witness, and are to be taken as true, unless outweighed by a preponderance of evidence.

Appeal from the District Court of the United States for the District of Porto Rico; Peter J. Hamilton, Judge.

Suit in equity by El Banco Popular de Economias y Prestamos de San Juan, P. R., against Elias B. Wilcox. Decree for complainant, and defendant appeals. Reversed.

Ben A. Matthews, of New York City (Jose R. F. Savage, of San Juan, P. R., on the brief), for appellant.

Frank Antonsanti, of San Juan, P. R., for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an appeal from a decree in the United States District Court for Porto Rico in an equity suit brought by El Banco Popular against Elias B. Wilcox, June 9, 1914, to foreclose certain mortgages. In the bill, after setting out the citizenship and residence of the respective parties, it is alleged:

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(1) That on July 29, 1909, one Landron and wife executed a mortgage before Damian Monserrat, Sr., as notary public, in favor of the bank, to secure the sum of $4,600, with interest at 1 per cent. per month for the term of one year; that the interest was to be paid in advance every four months, and, in case of failure to pay the same as agreed, the mortgage should be considered overdue. The mortgagor was to keep the property insured for the amount of the mortgage, and, in case it became necessary to institute judicial proceedings to enforce collection, the mortgagor was to be liable for an additional sum of $500 to cover costs, disbursements, and attorney's fees; that the mortgage had not been paid in whole or in part, and that interest was due thereon from August 2, 1913, to March 3, 1914, amounting to $322.

(2) That on December 3, 1912, said Landron and wife executed another mortgage before Damian Monserrat, Sr. (Jr.), as notary public, to secure the sum of $1,700, and interest at 1 per cent. per month for the term of one year; that the interest was to be paid in advance every four months, and in case of failure so to do the mortgage was to become due; that the mortgagor was to keep the property insured for the amount of the mortgage debt, which he failed to do, and that the bank had been obliged to pay for insurance premiums the sum of $108.68; that an additional sum of $200 was provided for to pay costs and attorney's fees in case of foreclosure; that said mortgage had not been paid, and that interest was due thereon from August 3, 1913, to March 3, 1914, in the sum of $119.

(3) That both mortgages were upon the same property, consisting of a house and lot situated in the district of Santurce, San Juan.

(4) That on January 14, 1913, Landron and wife conveyed said house and lot by deed executed before Damian Monserrat, Sr., as notary public, to the defendant Wilcox, who therein assumed and agreed to pay the mortgages above stated.

(5) That there is now due and owing from the defendant to the bank, on said mortgages, the sum of $7,549.68; that no part of said sum or the interest thereon since March 3, 1914, had been paid, though the same was overdue and payment thereof had been demanded of the defendant.

It prayed that Wilcox be required to answer—

"the several matters and things hereinbefore stated, as fully and particularly as if they were herein again repeated, and he was thereunto especially interrogated, and that the premises aforesaid may be sold for payment of your orator's claim, with interest as aforesaid, and that your orator may have such further or other relief as his case may require."

July 20, 1914, the defendant filed an answer and a cross-bill. August 3, 1914, the plaintiff filed motions to strike the answer and the cross-bill. July 29, 1915, these motions were denied. October 26, 1915, no demurrer, plea, or answer to said cross-bill having been filed, although it should have been before the rule day of the preceding month, the defendant filed a motion for a decree pro confesso upon the cross-bill. November 15, 1915, plaintiff filed motions to dismiss the answer and to dismiss the cross-bill. January 27, 1916, the court rendered an

opinion and entered an order denying the defendant's motion for a decree pro confesso, and granting the plaintiff's motions to dismiss the answer and the cross-bill unless they, were amended within a limited time, to which rulings the defendant excepted.

In the opinion the court disposed of the motion to take the cross-bill pro confesso by saying that it was not pressed or insisted upon, and he regarded it as waived; and, having pointed out that a motion to strike related to formal matters, while a motion to dismiss took the place of the old demurrer and related to "questions of law and of equity," he proceeded to consider whether the answer and the cross-bill stated an equitable defense or ground for relief, and held that, inasmuch as it was not alleged in either of them that the stipulation in the deed of January 14, 1913, whereby Wilcox assumed and agreed to pay the two mortgages, was inserted in the deed through fraud and without his knowledge or consent, but only alleged that the stipulation was not the contract entered into between him and the Landrons, the allegation did not state an equitable defense, as the conversations leading up to the execution of the deed were merged in it, and that neither the answer nor the cross-bill asked for reformation of the deed, but sought to avoid it "on the ground of parol conversations beforehand."

As to the allegations in the cross-bill—that the deed of January 14, 1913, was null and void because the notary before whom it was executed was, at the time, a stockholder in and president of the bank, and that the witnesses to the deed were then in the employ of the notary, either of which facts would render the deed null and void under section 20 of the law concerning notaries (section 1998 of the Revised Statutes and Codes of Porto Rico)—the court did not undertake to determine whether they set forth a valid defense, saying that he did not consider the question as at present before the court; that "if it be a valid defense, it arises out of the transaction sued on by the plaintiff, and is therefore within the scope of equity rule 30 (201 Fed. v, 118 C. C. A. v) as to set-off and counterclaim," and, such being the case, it "can be set up in an answer, and does not need a cross-bill."

July 5, 1916, the defendant filed an amended answer, wherein, among other things, he alleged that prior to the date of the execution of the deed of January 14, 1913, he was the owner of a second mortgage upon the property in question, which he had proceeded to foreclose, so far as to obtain a decree of foreclosure, and was about to sell the same to satisfy his judgment, when, at the instance of Damian Monserrat, Sr., he was induced to forego the selling of the property and to enter into an agreement to assume payment of the mortgage for $4,600 and cancel his judgment against the Landrons, upon Landron and wife agreeing to deed the property to him; that said Monserrat, being aware of the terms of the agreement, was to prepare the deed for execution; that the terms of the agreement between him and Landron were reduced to writing; that thereafter said deed of January 14, 1913, was prepared by Monserrat; that it was written in the Spanish language and was of great length; that, on being assured by Monserrat that it faithfully stated the agreement between him and the Landrons, he was induced to accept and sign the deed; that he never promised to

pay the $1,700 mortgage, and did not know of its existence until after the deed of January 14, 1913, was made and accepted; that Monserrat was, at the time he prepared the deed, the president and attorney of said bank and a stockholder therein; that he was largely, if not wholly, responsible for the loan to Landron; that the mortgage of December 3, 1912, for $1,700, was a third mortgage upon the property, and was a loss to the bank if it existed; and that the change made in the deed from that of the agreement entered into between him and the Landrons was a fraudulent effort to unload the $1,700 indebtedness upon the defendant. It was further alleged that Monserrat, at the time he took the acknowledgment of the deed, was the president, legal representative, and a heavy stockholder in the bank, and that the witnesses to the execution of the instrument were in his employ, all of which was in violation of law and rendered the instrument null and void. He prayed (1) that the bill be dismissed and the plaintiff take nothing thereby; and (2) that the deed of January 14, 1913, be held for cancellation and declared null and void. This answer was made under oath.

A trial having been had, on August 25, 1916, a decree of foreclosure was entered, in which it was adjudged that the defendant, by virtue of the deed of January 14, 1913, purchased the property in question and assumed and became liable to pay the two mortgages held by the bank, and that there was then due and owing it on said mortgages the sum of $9,631.92. It was further ordered and decreed that the defendant pay the complainant said sum, with interest, within 90 days, and, in default thereof, that the mortgaged property be sold and all rights of the respondent forever barred and foreclosed.

At or about the time this decree was entered an opinion was filed in which it appears that the court viewed the question presented by the evidence to be whether the defendant was informed of the existence of the $1,700 mortgage of December 3, 1912, which was not recorded until January 28, 1913, at the time he accepted the deed of January 14, 1913, without regard to whether he then in fact knew of the stipulation inserted in the deed of January 14 with reference to the mortgage for $1,700, and held that, regarding, as he did, the deed of January 14 as the primary source of evidence in the transaction, he felt controlled by the stipulation therein contained as to the $1,700 mortgage, for he could not regard the evidence of fraud of such persuasive character as to convince him that the deed did not state the real transaction. He did not consider the defense set up as to the invalidity of the deed by reason of the notary, Monserrat, being the president and a large stockholder in the bank, and the witnesses to the deed being the employés of the notary.

[1] We do not deem it necessary to consider at length the questions presented by the motions to dismiss the original answer and the cross-bill. Neither that answer nor the cross-bill alleged that the stipulation relied upon by the plaintiff was introduced into the deed of January 14, 1913, through fraud; and the answer contained no allegations, as did the cross-bill, with reference to the nullity of the deed. There would seem to be no reason, however, why the court below,

even though the cross-bill did not answer the requisites of such a bill when tested by the technical rules of pleading in equity, should not have regarded it as an answer and decided whether the defense set up as to the nullity of the deed presented a valid defense; for in rule 18 of the general equity rules (198 Fed. xxiii, 115 C. C. A. xxiii) it is provided that "unless otherwise prescribed by statute or these rules the technical forms of pleadings in equity are abolished," and in rule 19 (198 Fed. xxiii, 115 C. C. A. xxiii) that "the court, at every stage of the proceeding, must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." In other words, it seems to us that the purpose sought to be accomplished by the general equity rules is that, if the substantial rights of the parties may be ascertained and determined according to the allegations contained in the pleadings, it is the duty of the court to consider and decide them without regard to the form in which they are presented, if they may be rightly understood.

But, inasmuch as the defendant was allowed to file an amended answer, which he did, and in which he set up, among other defenses, the defense of nullity of the deed because of the interest of the notary and the witnesses being his employés, we think that the defendant was in no way injured by the granting of the motion to dismiss the cross-bill without the merits of the defense having then been determined.

[2] It remains to be considered whether the allegations of fraud and nullity set up in the amended answer present valid grounds of defense, and, if so, whether the weight of the evidence calls for findings in accordance therewith.

It is in substance conceded and there can be no doubt, if the stipulation with reference to the assumption by the defendant of the $1,700 mortgage was inserted in the deed through the fraud of the notary, that it is a valid ground of defense as to that mortgage, for the defendant could not be charged with its payment, as was sought to be done in the bill and as was in fact done in the decree. The object of setting out in the bill of complaint the stipulation wherein it is alleged that the defendant assumed and agreed to pay the two mortgages for $4,600 and $1,700 was (1) to make the $1,700 mortgage, which in the absence of the agreement in the deed would be a third mortgage, a second mortgage and enlarge the amount which the defendant would be required to pay in order to redeem; and (2) to conclude him as to the balance due on the judgment after applying the sum realized from the sale of the mortgaged property when he is sued for that balance. Although the decree rendered in the foreclosure suit does not expressly provide for a deficiency judgment, the defendant would nevertheless be concluded by that decree as to his obligation to pay the balance due, which could be recovered against him in a subsequent suit. Coney v. Winchell, 116 U. S. 227, 230, 6 Sup. Ct. 366, 29 L. Ed. 610.

If, however, the stipulation as to the $1,700 mortgage was inserted through fraud, this alone would not militate against a judgment of foreclosure being entered against the defendant as to the mortgage for $4,600 and charging him with the payment of the debt secured therein. But if the stipulation in the deed as to the payment of the $4,600 mort-

gage was rendered invalid by reason of the deed being a nullity, having been executed before a notary not authorized to act in the premises, or because witnessed by his employés, we think a judgment charging the defendant with the payment of the amount of the debt secured by that mortgage could not be sustained, and for the reasons above given.

As to the question of fraud the defendant's evidence showed that, having procured a judgment of foreclosure in the sum of $1,465.35 on a mortgage which he held on the property, which mortgage was a second mortgage to that of the bank for $4,600, and being about to sell the property at public sale to satisfy the judgment, Damian Monserrat, Sr., came to him to see if there might not be a way of settling the matter without subjecting Landron, the mortgagor and a fellow lawyer, to the humiliation of advertising his property at public sale, and requested the defendant to go to the office of Landron to discuss the matter; that shortly thereafter he met Monserrat, Sr., at Landron's office, and that a Mr. Timpson accompanied him there; and after discussing the matter it was finally agreed between Landron and the defendant that the latter would take a transfer of the property in satisfaction of his judgment and would become responsible for the mortgage indebtedness recorded on the books of the registry of property of a date prior to the defendant's mortgage; that nothing was said about a mortgage of $1,700, or any other mortgage indebtedness, except that which the bank held for $4,600; that, after the terms had been agreed upon, Monserrat, who was to draw the deed, left the office; that shortly thereafter the agreement entered into between the defendant and Landron was, on January 13, 1913, reduced to writing and signed by the parties, one copy of which was given to Landron and the other retained by the defendant, and that Timpson signed the agreement as a witness to Landon's signature; that by the terms of this agreement Landron, representing himself and as attorney in fact for his wife, contracted to sell the house and lot in question to the defendant; that the consideration therefor should be the amount of the judgment stated in the decree in the defendant's foreclosure proceeding; that the defendant would assume the duly registered incumbrances on the property appearing of a date prior to the defendant's mortgage; that if within 30 days from the date of the agreement Landron desired he might repurchase the property for the judgment plus the sum of $500 and all expenses necessary in connection with the resale of the property; that in case he did not conclude to repurchase the same within 30 days he should vacate the property promptly and pay as rental for the time he remained therein a sum "equal in amount to the interest for that time, payable to the Bank of Porto Rico upon the mortgage held by said bank against said property"; that on the following day, to wit, January 14, 1913, the parties met at the office of Monserrat, Sr., the notary, and executed the deed that contained the provision stating that the defendant assumed the mortgage of $1,700 held by the bank, as well as that he assumed the mortgage for $4,600; that the defendant did not read the deed, which was written in longhand in the Spanish language and covered several pages, as he was in a hurry, and that it

was not read to him; that before signing it the notary, Monserrat, Sr., assured him that it was drawn in accordance with the agreement which the parties had made, and that, relying on this, he signed and accepted the deed; that he had not seen Monserrat, Sr., from the time he was at the office of Landron when the agreement was made up to the time the parties met at the office of the notary to sign the deed; that a few months after this transaction took place the defendant called at the plaintiff bank and paid the interest claimed to be due on the bank's mortgage; that, thinking that the interest which he was called upon to pay was greater than it should have been, he thereafter examined the deed, and for the first time learned that it contained a provision whereby he assumed the payment of the $1,700 mortgage; that this was the first knowledge that he had of this provision of the deed; and that he thereafter declined to pay, and did not pay, any further interest. Mr. Timpson was called as a witness and testified that he was present at Landron's office at the time the agreement was entered into and that Monserrat, Sr., was present; that afterwards, on the agreement being reduced to writing, he took a memorandum of the agreement drawn up in duplicate to Landron's office, who read and signed it; and that he himself signed the paper as a witness.

On behalf of the plaintiff, Monserrat, Sr., testified that he did not recall being present at Landron's office at the time the agreement was made; that the only knowledge he had of the agreement between Landron and the defendant was obtained from the defendant himself, who called to see him at a time prior to the parties appearing at his office to execute the deed; that the defendant then told him the terms of the agreement, of which he made a memorandum, from which he afterwards drew the deed, and that the deed was made in accordance with the instructions thus received; that at the time the parties met to sign the deed the defendant read the deed himself, and that he, the notary, also read the deed to the defendant and the witnesses to the deed. The plaintiff did not call the witnesses to the deed to testify, but did call Landron, who testified that, while he remembered that Wilcox came to his office to talk about the settlement, he did not remember that Monserrat, Sr., was there with him at that time; that he signed the document that had been agreed upon, drawn up, as he supposed, by Wilcox, and brought to him by an American whose name he did not know, but who used to attend to some business for Wilcox. His testimony was inaccurate and confused as to the details of the different transactions, and he gave no testimony as to whether at the time the deed was signed it was read over by Wilcox or by Monserrat, Sr., the notary, in the presence of Wilcox.

It was agreed that Monserrat, Sr., at the time the deed was executed, was the president of the bank and a stockholder therein, and the allegation in the sworn answer of the defendant that Monserrat was largely, if not wholly, responsible for the loans from the bank to Landron was nowhere denied in the testimony.

The written memorandum of January 13, 1913, was offered in evidence by the defendant, and was excluded subject to exception, but was permitted to be read. Why this document was excluded, and why

its contents were permitted to be read into the record is not entirely clear. It surely was competent evidence to be considered, together with other proof upon the question of fraud. Whether any weight was given to it as evidence we have no way of ascertaining. The reasonable conclusion would seem to be that, having excluded it, the court gave it no weight, but allowed it to be read into the record, to show the nature of the agreement in case its exclusion might subsequently be brought in question. It was an important piece of testimony upon the question of fraud and should have been received. It showed that Wilcox had agreed with Landron to assume the mortgage given to the bank, which was duly registered and bore a date prior to the defendant's mortgage, and that Landron, in case he did not repurchase the property, was to pay as rental, for the time he occupied the premises, the amount of the interest upon the mortgage held by the bank. That this was their agreement seems to be clearly established, and the question is, if we assume that Monserrat, as he testified, received his information as to the terms of the agreement from Wilcox, whether it is reasonably probable that Wilcox, having made the agreement that he did with Landron, could have told Monserrat that he had agreed to assume, not only the $4,600 mortgage held by the bank, but also the $1,700 mortgage, or that he read the deed, or the provision in it binding him to pay the $1,700 mortgage, or that the deed was read to him by Monserrat. What was he to gain by entering into such a transaction? He held a mortgage upon the property that antedated the $1,700 mortgage, upon which he had obtained a judgment of foreclosure, and the property had been advertised for sale on the 5th of the following month, when the equity of Landron would be extinguished. He stood to lose, not to gain, by making such an agreement, and the reasonable inference is that he did not do so.

But the interest of Monserrat, Sr., in the transaction was quite different. He was the president of the bank that held the $1,700 mortgage, he had been largely instrumental in making the loan from the bank to Landron, and he was individually interested in the welfare of the bank, being a stockholder in it; and it seems to us that the evidence, when taken as a whole, demonstrates that he purposely concealed from Wilcox the fact that the deed obligated him to pay the $1,700 mortgage, and that the court below erred in finding that Wilcox was responsible for and bound to pay the sum called for by that mortgage.

Section 20 of the Notarial Law of Porto Rico of March 8, 1906 (section 1998 of the Compilation of 1911), reads as follows:

"The following public instruments shall be null and void:

"First. Those in which the notary authorizing same has intervened as a party thereto, or which contain any provision in his favor.

"Second. Where the relatives of the parties concerned therein, or the relatives, clerks or servants of the notary authorizing the instrument, are witnesses thereto."

As above pointed out, if Monserrat, the notary before whom the deed was constituted, intervened as a party to the deed, or it contained

any provision in his favor, or was witnessed by his relatives, clerks, or servants, the deed was a nullity, and the obligation contained therein by which Wilcox assumed to pay the mortgage of $4,600 became unenforceable.

[3] The plaintiff contends that it acquired no interest whatsoever under the deed by Wilcox's assumption of the mortgage indebtedness for $4,600, or by his assumption of the mortgage for $1,700, even if that was not brought about through fraud, and that it could at any time foreclose the mortgages either against Wilcox or Landron, as the "right of action was always against the property and not against the person." But this contention loses sight of the fact that, in this proceeding, the bank is not seeking simply to foreclose the rights of Wilcox in the property, but to charge him with the obligation to pay the indebtedness secured by the mortgages, and that its right to do so depends upon the validity of the deed and the provisions contained therein as to Wilcox's assumption of the indebtedness secured by the mortgages (Ayres v. Wiswall, 112 U. S. 187, 5 Sup. Ct. 90, 28 L. Ed. 693; Willard v. Wood, 135 U. S. 309, 10 Sup. Ct. 831, 34 L. Ed. 210; Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494, 33 L. Ed. 667; Union Life Ins. Co. v. Hanford, 143 U. S. 187, 190, 12 Sup. Ct. 437, 36 L. Ed. 118; Garnsey v. Rogers, 47 N. Y. 233, 241, 7 Am. Rep. 440), and that the bill of complaint alleges the assumption of these obligations as a ground for effecting this result.

[4] We are therefore of the opinion that the bank, if the deed was valid, would acquire an interest in Wilcox's assumption of the $4,600 mortgage, and the question is whether Monserrat, Sr., the notary, by reason of his being the chief executive officer of the bank and a substantial stockholder, had such an interest as would disqualify him from acting as notary in the transaction within the meaning of the notarial law above quoted.

While the provisions of this law are old, being taken from the Spanish notarial law, no decisions of the Spanish courts construing them have been called to our attention, and it is asserted by counsel that none are to be found, for the reason that under the notarial law of Spain a notary could not take part in his notarial district in the administration of a bank of discount, or a brokerage establishment or any commercial or industrial company, and that a notary, not being permitted to be an executive of a bank, no occasion for a construction of the law has arisen.

The provision of law prohibiting a notary from taking part in the administration of a bank in his notarial district is not now in force in Porto Rico, but inasmuch as it was embodied in the old notarial law of the island, of which section 20 was a part, it would seem that it might be availed of in ascertaining the meaning of the section. But, however this may be, we think that section 20 is capable of but one of two constructions; that either it means that a deed should be void if the notary before whom it was acknowledged had any interest in the transaction, however slight, or that it should be void only in case it was made to appear as a fact that his interest was sufficiently large to cause him to be biased. Opinion of the Justices, 75 N. H. 613, 72 Atl.

754, and cases there cited. And on either construction it seems to us the defendant must prevail, for we are of the opinion that, inasmuch as the notary was the president and a substantial stockholder in the bank, he had a material interest in the transaction which would disqualify him to act as notary and that the deed is a nullity.

[5] We are also of the opinion that the deed was null and void, and the provision in question unenforceable, for the reason that the witnesses to the deed were the clerks or servants of the notary. In the amended answer, which was under oath, the defendant has alleged as a fact that the witnesses to the execution of the deed were in the employ of Monserrat, the notary. The bill of complaint did not waive an answer under oath, but called upon the defendant to make answer to the several matters and things therein stated as fully and particularly as though they were again repeated, and he was therein especially interrogated. The plaintiff offered no evidence whatever in denial of those allegations. It is a rule in general chancery practice that, when an answer is under oath, such parts of it as are responsive to the bill are evidence equal to the testimony of one credible witness and are therefore to be taken as true unless outweighed by a preponderance of evidence. Kennedy v. Custer, 174 Fed. 972, 98 C. C. A. 584; Jacobs v. Van Sickle, 127 Fed. 62, 61 C. C. A. 598; Campbell v. Northwest Eckington Co., 229 U. S. 561, 574, 579, 33 Sup. Ct. 796, 57 L. Ed. 1330; Vigel v. Hopp, 104 U. S. 441, 26 L. Ed. 765; Clark's Executors v. Van Riemsdyk, 13 U. S. (9 Cranch) 153, 160, 3 L. Ed. 688; 1 Whitehouse, Equity Practice, § 282.

The bill should have been dismissed; it having been brought against Wilcox as the owner of the equity, when in fact he was not the owner, the deed to him being a nullity, and Landron not having been made a party. Terrell v. Allison, 88 U. S. (21 Wall.) 289, 22 L. Ed. 634; Whitehouse, Equity Practice, § 68.

The decree of the District Court of Porto Rico is reversed, and the case is remanded to that court, with directions to enter a decree dismissing the bill, and the appellant recovers his costs.